**GFI, INC., Plaintiff–Appellant,**

v.

**FRANKLIN CORPORATION, Defendant–Cross Appellant,**

and

**Washington Furniture Manufacturing Co., and Astro Lounger Furniture Manufacturing, Defendants–Cross Appellants,**

v.

**Parkhill Furniture, Inc., Defendant–Appellee.**

**Nos. 00–1268, 00–1288.**

United States Court of Appeals, Federal Circuit.

Sept. 7, 2001.

James J. Foster, Wolf, Greenfield & Sacks, P.C., of Boston, MA, argued for plaintiff-appellant GFI, Inc. With him on the brief was Matthew B. Lowrie.

Norwood Robinson, Robinson & Lawing, L.L.P., of Winston–Salem, NC, argued for defendant-cross appellant Franklin Corporation. With him on the brief were John N. Taylor, Jr., and Stephen Robinson.

V. Bryan Medlock, Sidley & Austin, of Dallas, TX, argued for defendants-cross appellants Washington Furniture Manufacturing Co., et al. Of counsel on the brief were Constantine L. Trela, Jr., and Joseph B. Maher, Sidley & Austin, of Chicago, IL. Also of counsel on the brief was Kenneth M. Burns, of Okolona, MS.

J.T. Martin, of Washington, DC, argued for defendant-appellee Parkhill Furniture, Inc. Of counsel was John M. Creekmore, of Amory, Mississippi.

Before MAYER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

MAYER, Chief Judge.

GFI, Inc. (formerly known as The Gentry Gallery, Inc.) ("GFI") appeals the judgments of the United States District Court for the Northern District of Mississippi (1) holding its United States Patent No. 5,064,244 ("'244 patent") unenforceable for inequitable conduct, *GFI, Inc. v. Franklin Corp.*, 88 F.Supp.2d 619 (N.D.Miss.2000) (opinion and order) ("*GFI III*"), and (2) granting summary judgment of non-infringement of the '244 patent by Parkhill Furniture, Inc's ("Parkhill") model 8000 furniture, *GFI, Inc. v. Franklin Corp.*, No. 3:97cv16–D–A (N.D.Miss. Sept. 8, 1999) (opinion and order) ("*GFI II*"). Washington Furniture Manufacturing Company ("Washington") and Astro Lounger Furniture Manufacturing ("Astro") cross-appeal the judgment of the district court holding

that the '244 patent was not invalid for obviousness under 35 U.S.C. § 103 (1994), *GFI III;* and Franklin Industries, Washington, and Astro cross-appeal the judgment of the district court (1) denying their motion for summary judgment of non-infringement under the doctrine of equivalents, *GFI, Inc. v. Franklin Industries,* 27 F.Supp.2d 686 (N.D.Miss.1998) ("*GFI I*"), and (2) denying their summary judgment motion under 35 U.S.C. § 287 (1994). We affirm.

## Background

GFI filed an application on January 3, 1991 for a patent on a sectional sofa in which a pair of reclining seats, on the same side of a wedge, is separated by a fixed console, which contains the control means for the reclining seats. GFI then filed a Petition to Make Special to expedite its consideration. After an initial rejection, GFI met with the examiner on June 12, 1991. The application issued as the '244 patent on November 12, 1991.

During the prosecution of the '244 patent, GFI entered discussions with Walter Durling, a furniture designer from Mississippi who designed and built a loveseat-like unit consisting of two recliners joined by a middle console. Durling filed a patent application on this design two months before the '244 patent application was filed. The discussions between GFI and Durling centered on extracting information from Durling regarding his conception and reduction to practice of the design. The application did not specify the location of the recliner controls, but Sproule, the named inventor of the '244 patent, saw a model of the Durling furniture in late October or early November of 1990 that had console-mounted controls. Durling offered to exchange his conception information for similar information about the conception and reduction to practice of the invention underlying the '244 patent; GFI refused. In 1997, GFI brought suit for patent in-

fringement against Franklin, Astro, Parkhill, and Washington (collectively "Franklin"). The defenses of inequitable conduct, obviousness, laches, equitable estoppel, and patent misuse were tried to the court in a non-jury trial.

## Discussion

■■■ First, we address GFI's claim that the district court forced it to disclose privileged information to Franklin. We apply regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (1) pertain to patent law, *Flex–Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1365, 57 USPQ2d 1635, 1637 (Fed.Cir.2001) ("[W]e will apply our own law to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right'" (citation omitted)), (2) bear an essential relationship to matters committed to our exclusive control by statute, or (3) clearly implicate the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction, *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir.1999) (en banc in relevant part). Because waiver by the disclosure of privileged material does not meet any of these criteria, we apply the law of the Fifth Circuit to our review of the district court's judgment. *Dorf & Stanton Comm., Inc. v. Molson Breweries,* 100 F.3d 919, 922, 40 USPQ2d 1761, 1764 (Fed.Cir.1996).

■■■ The Fifth Circuit reviews a district court's ruling on waiver of attorney-client privilege for clear error as a question of fact, and reviews conclusions of law, *de novo. United States v. Robinson,* 121 F.3d 971, 974 (5th Cir.1997). "It is vital to a claim of privilege that the communication have been made and maintained in confidence". *United States v. Pipkins,* 528 F.2d 559, 563 (5th Cir.1976). A client

waives the attorney-client privilege by failing to assert it when confidential information is sought in legal proceedings. *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir.1999). Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected. *Id.* Further inquiry into the substance of the client's and attorney's discussions does implicate the privilege and an assertion is required to preserve it. *Id.* When a party voluntarily waives attorney-client privilege, that waiver extends to all communications pertaining to the subject matter of the communications. *Id.* at 207 (A client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication.).

■■■■ Franklin claims that GFI waived the privilege when its patent attorney testified in an earlier trial, *Gentry Gallery, Inc. v. Berkline Corp.,* 939 F.Supp. 98, 41 USPQ2d 1345 (D.Mass.1996) (*"Berkline"*), about the privileged information and when it failed to timely submit detailed privilege logs in accordance with local rules to permit Franklin to challenge its assertion of privilege. The district court properly found that GFI waived privilege when its patent attorney testified in the *Berkline* litigation about his state of mind, knowledge of prior art, and communications with his client. On cross-examination, he discussed his conversations with Sproule regarding the duty of disclosure, discussions they had prior to an interview with the PTO, and various items of prior art Sproule had or had not told him about. We see no error in the district court's order to GFI to release the allegedly privileged information.

■■■■ To prevail on its defense of inequitable conduct, Franklin must prove by clear and convincing evidence that GFI withheld material information from the PTO, and the information was withheld with intent to deceive the PTO. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,* 237 F.3d 1359, 1366, 57 USPQ2d 1647, 1652 (Fed.Cir.2001) (To prove inequitable conduct in the prosecution of a patent requires evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.). We review the district court's ultimate determination of inequitable conduct under an abuse of discretion standard. *Kolmes v. World Fibers Corp.,* 107 F.3d 1534, 1541, 41 USPQ2d 1829, 1834 (Fed.Cir.1997). " 'We, accordingly, will not simply substitute our judgment for that of the trial court in relation to inequitable conduct.' " *Purdue,* 237 F.3d at 1366, 57 USPQ2d at 1652 (quoting *Kingsdown Med. Consultants v. Hollister, Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (en banc)).

■■■■ Inequitable conduct entails a two-step analysis: first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be unenforceable. *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1327, 47 USPQ2d 1225, 1228–29 (Fed.Cir. 1998). Both intent and materiality are questions of fact reviewed for clear error. *Id.* "The more material the omission, the less culpable the intent required, and vice versa." *Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1439, 17 USPQ2d 1834, 1838 (Fed.Cir.1991). The challenged conduct must be sufficient to require a finding of deceitful intent in light of all the circumstances. *Kingsdown,* 863 F.2d at 873, 9 USPQ2d at 1389.

GFI does not dispute that the five references relied upon by the district court in its inequitable conduct determination were not before the examiner, but argues that none of them were material and, in any case, that Franklin did not prove deceptive intent by clear and convincing evidence. Materiality is not limited to prior art but instead embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent. *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1382, 47 USPQ2d 1533, 1534 (Fed.Cir.1998). However, a patentee need not cite an otherwise material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner. *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440, 17 USPQ2d 1834, 1839 (Fed.Cir.1991).

The district court properly found the Durling references material because they contained the elements of two recliners joined by a middle console, albeit in a loveseat and not a sectional, and had console-mounted controls on the model viewed by Sproule. GFI argues that Durling cannot be material because it is not prior art. That is not the law, and, even if it were, the very essence of the discussions between GFI and Durling were motivated by an effort to determine priority of invention between the '244 patent and Durling's patent application. The district court made no finding as to priority and we will not make that determination in the first instance on appeal. In any case, it was incumbent on GFI to disclose the potential priority conflict to the examiner and not to unilaterally make a determination that Durling was not prior art. *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1076, 22 USPQ2d 1025, 1033 (Fed.Cir.1992) (It is axiomatic that "[c]lose cases should be resolved by disclosure, not unilaterally by applicant."). Even if the prior art dispute had been resolved in the manner asserted by GFI, Durling's status as prior art is not dispositive of its materiality because a reasonable examiner would have been substantially likely to find important the two recliners separated by a center console of Durling's patent application and the center-mounted console of the Durling model viewed by Sproule prior to the filing of the application that issued as the '244 patent. The Durling references were not cumulative because no reference before the examiner disclosed this combination of required elements.

As we have noted before, the facts in inequitable conduct cases rarely include direct evidence of admitted deceitful conduct. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180, 33 USPQ2d 1823, 1828–29 (Fed.Cir.1995). The intent element of the offense is therefore in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred. *Akron*, 148 F.3d at 1382, 47 USPQ2d at 1535. "'However, materiality does not presume intent, which is a separate and essential component of inequitable conduct.'" *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552, 16 USPQ2d 1587, 1593 (Fed.Cir.1990) (quoting *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567, 5 USPQ2d 1769, 1778 (Fed.Cir.1988)). When examining intent to deceive, a court must weigh all the evidence, including evidence of good faith. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1580, 42 USPQ2d 1378, 1384 (Fed.Cir.1997).

The strongest case for deceptive intent are the Durling references. It is undisputed that GFI was aware of the references. GFI possessed a copy of the Durling patent application (sent to it by

Durling) and Sproule had seen the model with console-mounted controls prior to the filing of the '244 patent application. GFI also entered into active negotiations with Durling to obtain priority information to assess the need for a license from Durling and the ability to obtain a patent on Sproule's concept. Despite their knowledge and the discussions conducted during the pendency of the '244 patent application, no disclosure was made to the PTO. We have held deceptive intent to be shown where a patentee withheld references and made an argument for patentability that could not have been made had the art been disclosed. *LaBounty*, 958 F.2d at 1076, 22 USPQ2d at 1032. Here, GFI specifically distinguished the disclosed references by arguing that none of them had console-mounted controls despite Sproule's prior knowledge that Durling had built a model with center-mounted recliner controls prior to the filing of the '244 patent application. Beyond its arguments that the Durling references were not material, which we have rejected, GFI does little more than deny any intent to deceive the Patent and Trademark Office. The district court did not clearly err in finding that the threshold deceptive intent was proven by clear and convincing evidence for the Durling references.

 No single factor or combination of factors can be said always to require an inference of intent to mislead. Yet a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish "subjective good faith" sufficient to prevent the drawing of an inference of intent to mislead. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257, 43 USPQ2d 1666, 1669 (Fed.Cir.1997). A mere denial of intent to mislead (which would defeat every effort to establish inequitable conduct) will not suffice. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411,

1416, 5 USPQ2d 1112, 1116 (Fed.Cir.1987). We see no abuse of discretion in the district court's conclusion that GFI's conduct was sufficient to warrant a conclusion of unenforceability in light of all the circumstances, *Kingsdown*, 863 F.2d at 873, 9 USPQ2d at 1389, especially considering the high degree of materiality of the Durling references, *Halliburton*, 925 F.2d at 1439, 17 USPQ2d at 1838. Because the failure to disclose the Durling references alone supports unenforceability of the claims of the '244 patent, we need not address the remaining references. Because the '244 patent is unenforceable for GFI's inequitable conduct, we do not reach the remaining claims regarding infringement which are moot.

*Conclusion*

Accordingly, the judgments of the United States District Court for the Northern District of Mississippi are affirmed.

*AFFIRMED.*